UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BERKSHIRE MEDICAL CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> MASSACHUSETTS NURSES ASSOCIATION, JULIE PINKHAM, DANA SIMON, ROLAND GOFF, and RUDY RENAUD, <br><br> Defendants. | Civil Action No. <br><br> **VERIFIED COMPLAINT** |

## VERIFIED COMPLAINT

Plaintiff Berkshire Medical Center, Inc. (the "Plaintiff" or "Medical Center"), by and through its attorneys, asserts the following cause of action against Defendants Massachusetts Nurses Association (the "MNA"), Julie Pinkham, Dana Simon, Roland Goff, and Rudy Renaud (collectively, "Defendants"). In support of its claim, Plaintiff avers the following, all upon its most recent knowledge, information, and reasonable belief:

## THE PARTIES

1. The Medical Center is an accredited, nonprofit community hospital that serves Berkshire County, Massachusetts, among other communities. The Medical Center is located at 725 North Street, Pittsfield, Massachusetts 01201. The Medical Center is an employer within the meaning of Section 2 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152. The Medical Center is the only comprehensive medical center in Berkshire County or in a 50-mile radius from the center of the county, an area approximately the size of Rhode Island, with a

population of 125,000 (about the size of the City of Springfield). Together with its small affiliated critical access hospital located in Great Barrington, the Medical Center is the only provider of acute care or emergency services in the entire county and, directly or through affiliates, provides a significant part of the primary care services and nearly all of the specialty services available to residents and visitors of Berkshire County. Berkshire County residents are dependent upon an exceptionally fragile health care delivery system that relies on Berkshire Medical Center and its affiliates to support, directly or indirectly, health care providers across the continuum whether formally affiliated with Berkshire Health Systems or not.

2. The MNA is a labor organization within the meaning of Section 2 of the LMRA, 29 U.S.C. § 152, serving as the exclusive collective bargaining representative of certain employees through its duly authorized officers or agents, with its principal office at 340 Turnpike St., Canton, MA 02021. The MNA is the certified and recognized exclusive bargaining representative of a bargaining unit of registered nurses ("RNs") at the Medical Center. The MNA represents employees in an industry affecting interstate commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185.

3. Defendant Julie Pinkham is an individual who serves as the Executive Director of the MNA.

4. Defendant Dana Simon is an individual who serves as a Director of Strategic Campaigns of the MNA.

5. Defendant Roland Goff is an individual who serves as a Director of Strategic Campaigns of the MNA.

6. Defendant Rudy Renaud is an individual who serves as a Director of Strategic Campaigns of the MNA.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the federal claims in this action that arise under Section 301 of the Labor Management Relations Act of 1947, pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1331.

8. This Court has personal jurisdiction over Defendants, which reside or have places of business in this District, and have significant contacts with and do business in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside or may be found in this District, a substantial portion of the events giving rise to the Medical Center's claims occurred within this District, and significant witnesses, documents, and other evidence are located within this District.

## NATURE OF THE ACTION

10. This action arises under Section 301 of the LMRA, 29 U.S.C. § 185. The Medical Center brings this *Boys Markets* injunction action (*see Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970)) against the Defendants for preliminary and permanent injunctive relief requiring the Defendants and the bargaining unit RNs, and their attorneys, agents, and representatives, to cease and desist from engaging in a strike (or any similar interference with the operation of the Medical Center) over arbitrable grievances as threatened in MNA's strike notice (the "Notice") (as described further below), and ordering the parties to resolve such disputes in arbitration as required by the applicable collective bargaining agreement. A copy of the Notice is attached hereto as Exhibit A.

11. The Medical Center and the MNA were parties to a collective bargaining agreement (the "Agreement") with an original effective date from October 1, 2013 to September 30, 2016. By its terms, the Agreement remained in effect after September 30, 2016 unless either

party provided 90 days' notice of non-renewal prior to September 30, 2016, and even when such 90-day notice is given, the Agreement remains in effect until either (a) a successor agreement becomes effective or (b) the Agreement is terminated by either party upon giving a further written notice of at least 30 days.  A copy of the Agreement is attached hereto as <u>Exhibit B</u>.

12. The Agreement remained in effect after September 30, 2016 because neither party gave at least 90 days' notice prior to September 30, 2016 of an intent to terminate the agreement. On or about March 2, 2017, more than five months <u>after</u> September 30, 2016, the MNA provided notice to the Federal Mediation & Conciliation Service and to the Medical Center of its intent to renegotiate the collective bargaining agreement (the "FMCS Notice").  A copy of the FMCS Notice is attached hereto as <u>Exhibit C</u>.

13. As of the date of this Complaint, no successor contract has been entered into by the parties or become effective.

14. On August 1, 2017, the MNA gave the Medical Center 30-day notice of its intent to terminate the Agreement.  The Agreement therefore remained effective until at least August 31, 2017.  A copy of the 30-day notice is attached hereto as <u>Exhibit D</u>.

15. The Agreement includes a grievance and arbitration procedure (Article XI) for resolving "**[a]ny** complaint or dispute involving the interpretation or application of the Agreement" (emphasis added). The grievance and arbitration procedure follows a three-step procedure (Section 11.2) that culminates in arbitration (Section 11.3).  Under the Agreement (Section 11.3), the "decision of the arbitrator shall be final and binding on all of the parties."

16. The Agreement includes a no-strike clause (Article XII) which provides: "[i]t is mutually agreed that during the term of this Agreement there will be no stoppage of work,

lockout, mass sick days, slow downs or any similar interference with the operation of the Medical Center."

17. On September 22, 2017, the MNA delivered the Notice to the Medical Center, stating that it would engage in "a strike and picketing beginning at 7:00 a.m. on October 3, 2017" and ending at 6:59 a.m. on October 4, 2017.

18. A press release distributed by the MNA on September 22, 2017 clearly identified the threatened October 3 strike as an "unfair labor practice strike", although much of the press release described the MNA's complaints about wages, benefits, and working conditions at the Medical Center. A copy of the press release is attached hereto as Exhibit E.

19. The one-day strike is motivated by and in protest of unfair labor practices allegedly committed by the Medical Center, as specifically noted in the MNA's press release.

20. Prior to issuing the Notice, the MNA had filed with the National Labor Relations Board, Region One, three (3) unfair labor practice charges against the Medical Center, alleging that the Medical Center had committed unfair labor practices: (a) in Case 01-CA-202549, MNA alleges that the Medical Center committed an unfair labor practice by sending a letter to bargaining unit nurses on July 13, 2017 that allegedly restrained, coerced, or interfered with protected rights; (b) in Case 01-CA-203331, MNA alleges that, on or about July 10, 2017, the Medical Center committed an unfair labor practice by allegedly implementing a new absenteeism policy without bargaining with the MNA; (c) in Case 01-CA-203962, MNA alleges that the Medical Center failed to provide to MNA requested information relevant to health insurance necessary for the MNA to bargain during the course of negotiations until on or about August 8, 2017. MNA has stated in negotiations that it needs the requested information, *inter alia*, to determine whether the Medical Center was deducting from bargaining unit nurses' paychecks the

proper amounts of such nurses' share of the cost of health insurance coverage.  Copies of the charges in Cases 01-CA-202549, 01-CA-203331, and 01-CA-203962 are attached hereto as Exhibits F, G, and H, respectively.

21. Each of the above-listed disputes is arbitrable under the Agreement because the matters complained of arguably violate provisions of the Agreement, including the Earned Time Article (Article VI), the Medical Insurance Clause (Section 7.1), the Recognition Clause (Section 1.1), the Non-Discrimination Clause (Section 1.2(c)), the Discipline Clause (Section 9.10), the Leave of Absences Clause (Section 8.1), and the Management Rights Clause (Section 13.1).

22. Because the disputes motivating the Defendants' imminent one-day strike occurred while the Agreement was still in effect, they are subject to grievance and arbitration procedures set forth therein, and the no-strike obligation continues to bind the MNA with respect to these disputes.

23. As a result, if injunctive relief is not granted, the Defendants will breach the provisions of the Agreement's grievance and arbitration procedure by seeking to resolve these arbitrable disputes by engaging in or otherwise directing the bargaining unit employees to strike on October 3, 2017 rather than by submitting them to the grievance procedure and arbitration.

24. Under the Agreement, the Medical Center lacks recourse for Defendants' breaches because the grievance and arbitration procedure is only available for union grievances and not Medical Center grievances.  Thus, the Medical Center also seeks an award of damages under Section 301 of the LMRA compensating the Medical Center for the cost to retain temporary replacement nurses, along with other costs that have been or will be incurred in connection with the strike.

WHEREFORE, the Medical Center seeks preliminary and permanent injunctive relief against the imminent and irreparable damage that the one-day strike would cause to the Medical Center, an order directing the parties to resolve their disputes in accordance with the grievance and arbitration provisions of the applicable collective bargaining agreement, and an award of money damages.

Dated:  September 27, 2017         Respectfully submitted,

ROPES & GRAY LLP

 /s/ David M. Mandel
David M. Mandel  BBO #317000
Douglas E. Brayley  BBO #676821
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000
David.Mandel@ropesgray.com
Douglas.Brayley@ropesgray.com

Counsel for *Berkshire Medical Center, Inc.*

## VERIFICATION

I, Arthur D. Milano, on oath and under penalties of perjury, hereby state that I am Vice President - Human Resources of Berkshire Medical Center, that I have read the foregoing Verified Complaint, and that the allegations contained herein are true and correct to the best of my present knowledge and belief, although the truth of all of said allegations may not be known to me personally and may be based in whole or in part upon the records of Berkshire Medical Center, Inc. and information acquired from others.

Executed on this 27th day of September, 2017:

_____
Arthur D. Milano